**RENNE PUBLIC LAW GROUP**
LOUISE RENNE (SBN #36508)
lrenne@publiclawgroup.com
RUTH M. BOND (SBN #214582)
rbond@publiclawgroup.com
STEVEN CIKES (SBN #235413)
scikes@publiclawgroup.com
ANASTASIA BONDARCHUK (SBN #309091)
abondarchuk@publiclawgroup.com
350 Sansome St., Suite 300
San Francisco, CA 94104
Telephone: (415) 848-7200
Facsimile: (415) 848-7230

**COHEN MILSTEIN SELLERS & TOLL PLLC**
JULIE GOLDSMITH REISER (*pro hac vice*)
jreiser@cohenmilstein.com
MOLLY BOWEN (*pro hac vice*)
mbowen@cohenmilstein.com
LYZETTE WALLACE (*pro hac vice*)
lwallace@cohenmilstein.com
1100 New York Ave. NW, 5th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

LAURA POSNER (*pro hac vice*)
lposner@cohenmilstein.com
88 Pine St., 14th Floor
New York, NY 10005
Telephone: (212) 220-2925

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| *In re Pinterest Derivative Litigation* | Lead Case No. 3:20-cv-08331-WHA<br><br>**PLAINTIFFS' POST-HEARING SUBMISSION**<br><br>Date: June 2, 2022<br>Time: 7:30 a.m.<br>Courtroom 12, 19th Floor<br>The Honorable William Alsup |

Plaintiffs respectfully make this submission to respond to the Court's questions at the May 26, 2022 Settlement Hearing regarding: examples of how the Ninth Circuit and courts within the Ninth Circuit award attorneys' fees in derivative cases, Plaintiffs' investigation and substantive interviews that informed their decision to settle, Plaintiffs' efforts to avoid duplicative work, as well as the parties' joint submission for post-Settlement monitoring.

1. **In Derivative Cases Resulting in a "Common Fund", Courts Within the Ninth Circuit Award Attorneys' Fees Based on a Percentage of the Value of the Common Fund and Reflecting Multipliers on the Plaintiffs' Counsel's Lodestar**

As the Ninth Circuit recently held in addressing an objection to an attorneys' fee award in a derivative case, "[w]e assume cases dealing with attorney's fees in class action settlements generally apply to attorney's fees in shareholder derivative action settlements due to shared common fund doctrine principles." *In re Wells Fargo & Company Derivative Litig*, Civ. No. 20-15898, at n. 1 (9th Cir. April 14, 2021) (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995); *Lewis v. Anderson*, 692 F.2d 1267, 1270 (9th Cir. 1982); *see also Powers v. Eichen*, 229 F.3d 1249, 1255–56 (9th Cir. 2000); *Sugarland Indus., Inc. v. Thomas*, 420 A.2d 142, 149 (Del. 1980)).[1] Here, Pinterest is obligated to spend $50 million on the Settlement terms. As such, $50 million is properly considered a common fund from which to consider the benefit conferred on Pinterest. *See, e.g., In re Google, Inc. S'holder Derivative Litig.*, Case No. C-11-4248, at 11-12 (N.D. Cal. Jan. 21, 2015) (transcript); *In re Google, Inc. S'holder Derivative Litig.*, Case No. C-11-4248, ECF 147, Ex. A-1, at 12 (N.D. Cal. Nov. 11, 2014) (considering a company's financial commitment to corporate therapeutics to be a common fund).

Plaintiffs' attorneys' fee request equates to 10.75% of the $50 million common fund created by the Settlement. In derivative common fund cases, courts within the Ninth Circuit

---

[1] The decision was designated as not appropriate for citation as precedent or publication except as provided by Ninth Circuit Rule 36-3, which allows for citations of a disposition pursuant to FRAP 32.1 (attached hereto).

1

Plaintiffs' Post-Hearing Submission

regularly award attorneys' fees of 20-25% of the common fund created. *See, e.g., In re Google, Inc. S'holder Derivative Litig.*, Case No. C-11-4248, ECF 147, Ex. A-1, at 12 (N.D. Cal. Nov. 11, 2014); *In re Google, Inc. S'holder Derivative Litig.*, Case No. C-11-4248, at 11-12 (N.D. Cal. Jan. 21, 2015) (transcript); *In re Google, Inc. S'holder Derivative Litig.*, Case No. C-11-4248, ECF 161, at ¶ 9 (N.D Cal Jan. 21, 2015) (awarding attorneys' fee of $9.9 million, representing slightly less than 20% of the amount Google agreed to spend on funding the settlement's user-safety initiative); *In re Wells Fargo & Company Derivative Litig.*, Civ. No. 20-15898, at 2 (9th Cir. April 14, 2021) (awarding attorneys' fee of $52.8 million, equal to 22% of the value of the settlement)[2]; *In re McKesson Derivative Litig.*, Case No. 4:17-cv-01850-CW, ECF 231-1 at 9-10 (N.D. Cal. Apr. 22, 2020) (awarding attorneys' fees of $43.75 million, equal to 25% of the value of the settlement).

Notably, in each of these cases, the attorneys' fee awards reflected a significant multiplier on the plaintiffs' counsel's lodestar. Here, Plaintiffs' Counsel's requested attorneys' fee award reflects a multiplier of just two. By contrast, in *Google*, the attorneys' fee award represented a multiplier of three on the plaintiffs' counsel's lodestar (*In re Google, Inc. S'holder Deriv. Litig.*, Case No. C-11-4248, at 11-12 (N.D. Cal. Jan. 21, 2015) (transcript) in *McKesson,* the attorneys' fee award represented a multiplier of 2.9 on the plaintiffs' counsel's lodestar (*In re McKesson Derivative Litig.*, Case No. 4:17-cv-01850-CW, ECF 231-1 at 9-10 (N.D. Cal. Apr. 22, 2020), and in *Wells Fargo*, the attorneys' fee award represented a multiplier of 2.7 on the plaintiffs' counsel's lodestar (*In re Wells Fargo & Company Derivative Litig*, Case No. 16-cv-05541, at 28 (N.D Cal. Apr. 7, 2020)). In each case, the fee was awarded based on the anticipated benefit to the company at issue.

---

[2] Plaintiffs in *Wells Fargo* had requested a "25% benchmark" attorneys' fee award and objectors had requested an attorneys' fee award between 11-17.5%. *Id.*

Plaintiffs' Post-Hearing Submission

### 2. Plaintiffs Negotiated for Books and Records, Conducted Nearly 20 Interviews, and Analyzed Publicly Available Allegations of Discrimination at Pinterest

During the May 27 hearing, the Court expressed concern about the lack of depositions taken in this case. But as set forth in the Reiser-Renne Declaration, (ECF No. 116-1), each of the plaintiff stockholders exercised their right to inspect Pinterest's books and records pursuant to Section 220. *Id*. at ¶¶ 19, 26, 30. Plaintiffs also located and interviewed 16 witnesses, yielding five former employees who were willing to allow their experiences and allegations to be included in the complaint. *Id*. at ¶ 20. Each Plaintiff also filed highly-detailed complaints based on their investigations and a thorough review of a number of employment discrimination complaints, articles, and social media posts describing the underlying allegations of widespread discrimination. *See* Amended Complaint (ECF No. 54) at ¶¶ 8, 10, 115, 158, 167, 209, 210-212, 214, and 330.[3] Thus, Plaintiffs were well-versed on the alleged lack of inclusion and respect that certain employees felt through myriad sources.

Further, as part of the Court-ordered ADR process, Plaintiffs requested and received additional tranches of documents, which were reviewed and analyzed for purposes of crafting meaningful governance reforms designed to create a new standard for changing corporate culture. Reiser-Renne Declaration at ¶ 28. In negotiating reforms, Plaintiffs also spent considerable time researching and interviewing their own experts about the types of reforms that several other similarly situated companies had implemented to reset their corporate culture, including Etsy, Starbucks and Airbnb, among others. *Id*. at ¶ 36. Plaintiffs also interviewed Wilmer Hale (in an effort to avoid duplication of its work) on a number of occasions to understand the themes and issues that arose from its employee interviews. *Id.* Finally, Plaintiffs interviewed Pinterest's third-

---

[3] These sources include, among others, *The New York Times, The Washington Post, The Wall Street Journal, Bloomberg, Axios and Medium,* as well as posts on *Twitter.*

Plaintiffs' Post-Hearing Submission

party provider for doxing prevention protocols. ¶ 41. Thus, while Plaintiffs' counsel did not depose witnesses under oath, there was a substantial amount of time spent investigating the claims at issue and considering the effectiveness of the reforms proposed in the context of Pinterest's needs and goals for a more inclusive and respectful culture.[4]

### 3. Plaintiffs Were Careful to Avoid Duplicative Efforts Once the Court Entered the Consolidation Order

As set forth in the Reiser-Renne Declaration, Interim Lead Counsel carefully and intentionally allocated work to avoid duplication of efforts. ECF No. 116-1, ¶¶ 31-32. Further, Plaintiffs did not include any time in their application for work performed after the Court preliminarily approved the Settlement, and prior to submission, each law firm carefully scrutinized its time to ensure that billing was for the benefit of this litigation and necessary to obtain the results achieved.

### 4. Joint Proposal for Settlement Counsel Reporting on Post-Settlement Compliance

The Court has inquired about a process to ensure that Pinterest will comply with the Settlement terms once final approval is given. As Pinterest's counsel pointed out at the hearing, if Pinterest does not comply with the terms of the Settlement, it would be in violation of the Court's order and subject to being brought back into court. That said, the parties have agreed to a post-settlement process whereby, for a two-year period, Plaintiffs' attorneys from Cohen, Milstein Sellers & Toll PLLC and Renne Public Law Group will be appointed Settlement Counsel and report to the Court on the progress of the Settlement. The terms of that post-Settlement process are attached hereto as Exhibit A. The parties were unable to agree to extend the post-Settlement process beyond two years.

---

[4] Notably, in *In re McKesson Derivative Litig.* no depositions were taken either.

4

Plaintiffs' Post-Hearing Submission

*   *   *

Accordingly, Plaintiffs respectfully ask that the Court award their requested attorneys' fees and expenses at this time. This request constitutes only 10.75% of the common fund, representing a 2.0 multiplier on counsels' lodestar, which was incurred for the benefit of the Company and is well-below standard awards in the Ninth Circuit.

The parties also jointly request final approval of the Settlement and the post-Settlement process set forth in Exhibit A.

Dated: June 2, 2022                     Respectfully submitted,

By: */s/ Julie Goldsmith Reiser*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
JULIE GOLDSMITH REISER (*pro hac vice*)
jreiser@cohenmilstein.com
MOLLY BOWEN (*pro hac vice*)
mbowen@cohenmilstein.com
LYZETTE WALLACE (*pro hac vice*)
lwallace@cohenmilstein.com
1100 New York Ave. NW, 5th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

LAURA POSNER (*pro hac vice*)
lposner@cohenmilstein.com
88 Pine St., 14th Floor
New York, NY 10005
Telephone: (212) 220-2925

*Counsel for Interim Lead Plaintiff the Employees' Retirement System of Rhode Island and Interim Lead Counsel*

**RENNE PUBLIC LAW GROUP**
LOUISE RENNE (SBN #36508)
lrenne@publiclawgroup.com
RUTH M. BOND (SBN #214582)
rbond@publiclawgroup.com
STEVEN CIKES (SBN #235413)
scikes@publiclawgroup.com
ANASTASIA BONDARCHUK (SBN #309091)
abondarchuk@publiclawgroup.com
350 Sansome St., Suite 300
San Francisco, CA 94104
Telephone: (415) 848-7200

Plaintiffs' Post-Hearing Submission

Facsimile: (415) 848-7230

*Counsel for Interim Lead Plaintiff the Employees' Retirement System of Rhode Island and Interim Liaison Counsel*

**WEISSLAW LLP**
JOEL E. ELKINS (SBN 256020)
jelkins@weisslawllp.com
9100 Wilshire Boulevard, #725 E
Beverly Hills, CA 90210
Telephone: (310) 208-2800
Facsimile: (310) 209-2348

JOSEPH H. WEISS (*pro hac vice*)
jweiss@weisslawllp.com
DAVID C. KATZ (*pro hac vice*)
dkatz@weisslawllp.com
JOSHUA M. RUBIN (*pro hac vice*)
jrubin@weisslawllp.com
KELLY K. MORAN (*pro hac vice*)
kmoran@weisslawllp.com
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010

*Counsel for Plaintiff Stephen Bushansky and Interim Executive Committee Counsel*

**BOTTINI & BOTTINI, INC**.
FRANCIS A. BOTTINI, JR. (SBN 175783)
fbottini@bottinilaw.com
ALBERT Y. CHANG (SBN 296065)
achang@bottinilaw.com
ANNE BESTE (SBN 326881)
abeste@bottinilaw.com
YURY A. KOLESNIKOV (SBN 271173)
ykolesnikov@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001
Facsimile: (858) 914-2002

*Counsel for Plaintiff Sal Toronto and Interim Executive Committee Counsel*

**ROBBINS LLP**
BRIAN J. ROBBINS (190264)
brobbins@robbinsllp.com
GREGORY E. DEL GAIZO (247319)
gdelgaizo@robbinsllp.com
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

*Counsel for Plaintiff Howard Petretta*

# EXHIBIT A

1. For a period of two years, Settlement Counsel will report to the Court once a year on the progress of the settlement.
2. Settlement Counsel will submit a written summary to the Court in June of each year, beginning with June 2023, and be prepared to answer the Court's questions at a status conference.
3. Settlement Counsel's written summary will include a discussion of Pinterest's Inclusion and Diversity metrics, such as those reported in Pinterest's diversity reports (see Reform IV.2, ECF 99-2 at 28), which for 2021 included:
    a. Percentage of women globally in leadership roles;
    b. Percentage of employees globally who self-identify as women;
    c. Percentage of U.S. employees who self-identify as black, Latiné or Hispanic, American Indian, Alaska Native, Native Hawaiian and/or Pacific Islander;
    d. Percentage of engineers globally who self-identify as women;
    e. Percentage of U.S. leadership roles held by employees who self-identify as black, Latiné or Hispanic, American Indian, Alaska Native, Native Hawaiian and/or Pacific Islander;
    f. Percentage of U.S. engineers who self-identify as black, Latiné or Hispanic, American Indian, Alaska Native, Native Hawaiian and/or Pacific Islander;
    g. Percentage of open roles that adhere to the Company's diverse slates approach
    h. Number of "Communities" and chapters;
    i. Number of employees by gender and race/ethnicity across job categories.
4. In addition, Settlement Counsel will also report on other aspects of the progress of the settlement, for which purpose, Settlement Counsel will receive the following Company Information, subject to Paragraph 9 of the Proposed Order and Final Judgment, ECF 117-1 at 4:
    a. Annual meeting with Global Head of Inclusion and Diversity, which will include a standard SWOT analysis – strengths in achieving the settlement goals, weaknesses, opportunities and threats (see Appendix A, ECF 99-2 at 33);
    b. Attendance at each meeting of the IAC (see Appendix B, ECF 99-2 at 34);
    c. Relevant, anonymized, non-privileged portions of Board and Committee minutes and materials, including the following reports required by the settlement to be provided to the Board/Committees:
        i. Pulse Surveys, listening sessions, and training evaluations aggregated and presented to the DEI Senior Leadership Team and TDCC on a twice-annual basis (see Reform II.10, ECF 99-2 at 28);
        ii. Ombuds Office (with tEQuitable as the Ombuds Program service provider) reports to the TDCC at least twice per year on its observations of the Company (see Reform III.1, ECF 99-2 at 28);
        iii. Summary presented to the full board on an annual basis regarding progress on the implementation of measurable DEI reforms (see Reform II.6, ECF 99-2 at 27);
        iv. The amount expended during the year on the implementation and maintenance of the settlement reforms (see Reforms XIV.1 &2, ECF 99-2 at 32).

Plaintiffs' Post-Hearing Submission