United States District Court
Northern District of California

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

***IN RE PINTEREST DERIVATIVE LITIGATION***

This Document Relates to:

ALL ACTIONS.

No. C 20-08331-WHA
No. C 20-08438-WHA
No. C 20-09390-WHA
No. C 21-05385-WHA

(Consolidated)

**ORDER RE MOTIONS FOR FINAL SETTLEMENT APPROVAL AND ATTORNEY'S FEES**

## INTRODUCTION

In this shareholder derivative suit, plaintiffs move for final approval of a settlement and for attorney's fees and costs. Defendants do not oppose, but one shareholder has objected. For the reasons stated below, the objection is **OVERRULED**. To the extent stated below, the motions are **GRANTED**.

## STATEMENT

A prior order detailed our facts (Dkt. No. 115). In brief, this lawsuit, brought by Pinterest shareholders, arises out of allegations of widespread race and sex discrimination at defendant Pinterest, Inc. Two former Pinterest employees, for example, complained internally, and later publicly, about discrimination they experienced as Black women while working for Pinterest. The company allegedly ignored the internal complaints. Numerous other female employees and employees of color are referenced in the complaint as confidential witnesses who similarly describe allegations of discrimination. The complaint further alleges pay inequity. For example, Pinterest's former COO, a Black woman, was allegedly paid less than her white male

1   peer despite her significant accomplishments at the company. When she raised the issue, the

2   complaint alleges, Pinterest's co-founder and CEO Benjamin Silbermann retaliated by firing

3   her. These events, among others, were alleged to be emblematic of a toxic culture at Pinterest

4   (Dkt. No. 54).

In response to public statements made by Pinterest employees, its board formed a special committee to investigate. Between June and December 2020, the committee conducted 350 interviews with current and former employees, among other steps. In December 2020, the committee proposed a series of reforms to address the problem. All of this reform work was independent of this derivative action.

Pinterest began to implement the special committee's reforms in early 2021 (Dkt. No. 107). These lawsuits were consolidated in a series of orders issued between December 2020 and July 2021 (Dkt. Nos. 28, 39, 49, 86). The parties reached a settlement in November 2021 (Dkt. No. 99). The settlement provided additional and incremental reforms beyond those provided by the special committee. Preliminary approval was given in February 2022 (Dkt. No. 115). Plaintiffs now move for final approval and for attorney's fees and costs. Defendants do not oppose either motion (Dkt. No. 120). Shareholders have received notice of the proposal and the requested fees, and one shareholder has objected. This order follows briefing and a fairness hearing.

**ANALYSIS**

Federal Rule of Civil Procedure 23.1 provides that a shareholder derivative action "shall not be dismissed or compromised without the approval of the court." Above all, "[t]he principal factor to be considered in determining the fairness of a settlement concluding a shareholders' derivative action is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *In re Apple Computer, Inc. Derivative Litig.*, 2008 WL 4820784, at *2 (N.D. Cal. Nov. 5, 2008) (Judge Jeremy Fogel) (quoting *Shlensky v. Dorsey,* 574 F.2d 131, 147 (3d Cir. 1978)). A district court may weigh a variety of factors as the particular facts of a case demand. Some factors include: the amount offered in settlement; the strength of plaintiff's case; the stage of the proceedings; and the expense and complexity of further

2

1    litigation. *See Linney v. Cellular Ak. P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). The reaction

2    of shareholders also factors into assessing the fairness of a settlement. *See In re Wells Fargo &*

3    *Co. S'holder Derivative Lit.*, 445 F. Supp. 3d 508, 518 (N.D. Cal. 2020) (Judge Jon Tigar),

4    *aff'd*, 845 F. App'x 563 (9th Cir. 2021).

5          Here, over 264,000 shareholder notices were mailed (Dkt. No. 123). A single Pinterest

6    shareholder, Matthew Sweeney, objected to the proposed settlement (Dkt. No. 123). His

7    objection is that the settlement is unduly focused on social welfare as opposed to prioritizing

8    shareholder value. Specifically, Mr. Sweeney objects that the $50 million budget contemplated

9    by the settlement is excessive and that this is lawsuit is frivolous. This is not convincing. An

10   independent special committee investigation concluded that there were serious cultural

11   problems at the company that warranted reform. Plaintiffs, moreover, cite numerous studies

12   suggesting that improving corporate governance through reforms like those provided in the

13   proposed settlement are attractive to investors and accordingly have the potential to increase

14   shareholder value (*see* Br. at 9, n.2; 12–13). Treating employees equitably and increasing

15   opportunities for women and people of color will benefit Pinterest and its shareholders. In

16   short, it is good business.

17         Mr. Sweeney further contends that notice to shareholders was inadequate because he did

18   not receive notice of the settlement until May 23, 2022, just one day before the deadline for

19   objections. This is troubling. Plaintiffs have, however, submitted a declaration from the

20   settlement administrator that notices were delivered directly to shareholders on March 2, 2022,

21   and that notice of the settlement was also published on Pinterest's website and in other

22   publications (Dkt. Nos. 122–123). The settlement administrator subsequently sent *additional*

23   notices to brokers in late March, and plaintiffs speculate that Mr. Sweeney may have received

24   his late notice from his broker. In light of these declarations, Mr. Sweeney's late notice does

25   not suggest a larger, structural failure in the approved notice to shareholders. Moreover, though

26   delayed, Mr. Sweeney received actual notice of the proposed settlement, voiced his objections,

27   and has been heard. Having been heard, Mr. Sweeney's objections are **OVERRULED**.

28

3

In short, the settlement will, among other improvements, help promote pay transparency at the company, help encourage equitable hiring practices, and require a commitment to not enforce non-disclosure agreements. The settlement will further establish mechanisms, including regular internal audits and accompanying reports to the board, to assess the progress of the reforms, which will be supported by a $50 million budget to be spent over ten years. As described in detail in the prior order granting preliminary approval, these reforms appear potentially meaningful (*see* Dkt. No. 115). Plaintiffs' motion for final approval is accordingly **GRANTED**.

Plaintiffs' counsel also seek attorney's fees in the amount of $5,373,079, which represents a 2.0 multiplier of their claimed collective lodestar. Pinterest stated at the motion hearing that it does not oppose the request, that its view is that the requested amount is reasonable, and that it prefers to leave the amount to the Court to decide. For the reasons that follow, this order will grant an adjusted lodestar of $2.5 million now and delay awarding a multiplier, if any, for two years, as detailed below.

"Under both Delaware and federal law, a court may grant fees and expenses to derivative counsel when the derivative suit . . . confers a substantial corporate benefit." *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1445 (N.D. Cal. 1994) (Judge Vaughn Walker); *see also Lewis v. Anderson*, 692 F.2d 1267, 1270 (9th Cir. 1982). The benefit need not be pecuniary to give rise to attorney's fees. *See Klein v. Gordon*, No. C 17-00123, 2019 WL 1751839, at *1 (C.D. Cal. Feb. 12, 2019) (Judge André Birotte Jr.). Rather, to conclude that the benefits realized by the corporation are substantial, a district court may find that "the results of the derivative action maintained the health of the corporation and raised the standards of the fiduciary relationships and of other economic behavior. . . ." *Ibid.* As in the class action context, courts in this circuit use either the lodestar or percentage method to assess the reasonableness of attorney's fees. *See, e.g., In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d at 519. Courts that employ the lodestar method have the discretion to approve a multiplier. *See, e.g.*, *Klein*, 2019 WL 1751839, at *4 (granting multiplier of 1.4).

4

As previously stated, the Court is concerned that this settlement could prove to be mainly cosmetic. No defendant will pay money to the corporation. Instead, certain corporate reforms are to be undertaken but a fair number of the reforms were already in place as a result of the corporation's own actions addressing the problem.

This settlement's incremental reforms may prove to be the most beneficial. They might, however, serve as weak therapeutics. The settlement includes a commitment, for example, to not enforce NDAs, but does not require directly informing employees who signed NDAs that they may speak freely about their experiences. Counsel also repeatedly tout that Pinterest has allocated a "budget" of fifty million over ten years to carry out the reforms. But a budget is not a fund. The money is not already appropriated or in a bank account.

These reforms are only as good as future implementation. Who will be there to enforce the settlement terms and police the corporation to make sure the reforms are realized?

Counsel want all of their fees now and to walk away, saying that they've achieved a benefit merely by reaching an agreement for future non-pecuniary reforms spread out over ten years. This is a recurring problem in derivative shareholder actions. *See, e.g.*, Sean J. Griffith, *Correcting Corporate Benefit: How to Fix Shareholder Litigation by Shifting the Doctrine on Fees*, 56 B.C. L. Rev. 1, 25 (2015) (describing a "proliferation" of non-pecuniary derivative action "settlements that nevertheless entitle the plaintiffs' attorneys to recover fees from the corporation").

After the Court raised this problem at a prior hearing, plaintiffs' counsel conferred and stated they would stay on an additional two years to monitor compliance (Br. 3–4). This would be helpful, but leaves the other eight years unpoliced. The settlement, if it has any true value beyond the reforms by the special committee, depends on compliance over the next ten years. The Court has encouraged the parties to agree on a longer monitoring period, but the parties were unable to reach an agreement on any length of time beyond two years (Dkt. No. 133).

Nonetheless, this order accepts the parties' proposal to have plaintiffs' counsel monitor compliance for two years. Therefore, a portion of the attorney's fee award will be postponed and paid out after we see how much benefit really flows from the settlement over that time.

Accordingly, an adjusted lodestar of **$2,500,000.00** will be awarded and paid now as attorney's fees. Counsel's claimed lodestar of $2,686,539.50 is too high for the amount of work done. While counsel negotiated the settlement, much of the difficult work of gaining Pinterest's acknowledgment of the problem and establishing a plausible framework for achievable reforms was already accomplished through the special committee's efforts. The special committee, for example, interviewed 350 Pinterest employees. Derivative counsel interviewed only sixteen. Moreover, they seek an award for work done by twenty-one attorneys from four different law firms. This was too many timekeepers. More effort should have been made to streamline the representation. The lodestar is accordingly reduced to $2.5 million. If counsel prefer, the Court will instead appoint a special master to scrutinize the lodestar. Please advise by **JUNE 17**.

A further amount may be awarded in two years based upon future compliance and a showing of the actual benefit that has flowed from the agreement. Plaintiffs' counsel must select no more than two partners and two associates to perform the monitoring and policing work. Over the next two years, counsel shall file a public report with the Court each **DECEMBER 31 AND JUNE 30**. The report shall set forth each goal of the settlement (over and above what was already required by the special committee) and state how much progress has actually been made (or not made) toward it. The report shall further attach the company's reports required under the terms of the settlement, including: "the audit reports presented to the Audit Committee on a periodic basis as the audits progress" and the accompanying "summary" provided "to the full board on an annual basis" (Dkt. No. 99-1, Exh. A § II, ¶ 6); the Annual Diversity Report (*id.* § IV, ¶ 2); the Inclusion & Diversity Team's quarterly reports (*id.* § VIII, ¶ 1); the "bi-annual audits for pay equity" (*id*. § XIII, ¶ 1); and the annual report tracking "the spending of funds used for implementation and maintenance of the reforms" (*id.* § XIV, ¶ 1).

As for costs, counsel request $47,047.58 in litigation expenses. The costs primarily involve legal research and expert fees. The costs seem reasonable. The request for reimbursement is **GRANTED** and shall be paid now.

/ /

/ /

**CONCLUSION**

The motion for final approval of the settlement is **GRANTED**. The settlement shall be consummated in accordance with its terms. The Court shall retain jurisdiction as described. Counsel's further request for attorney's fees and costs is **GRANTED** to the extent stated above.

**IT IS SO ORDERED.**

Dated: June 9, 2022.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE