# COHENMILSTEIN

Julie Goldsmith Reiser
(202) 408-4600
jreiser@cohenmilstein.com

February 9, 2023

**VIA ELECTRONIC FILING**
Honorable William Alsup
San Francisco Courthouse
Courtroom 12-19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *In re Pinterest Derivative Litigation*, 3:20-cv-08331-WHA

Dear Judge Alsup:

Pursuant to the Court's Order Requesting Additional Information re Status Report of January 12, 2023 (ECF No. 138) (the "Additional Information Order"), in our capacity as Monitoring and Compliance Counsel we have undertaken the following steps:

- Conferred with Pinterest;

- Attended another quarterly Inclusion Advisory Council meeting; and

- Monitored public news regarding Pinterest as an employer and as an influencer in the technology community.

Monitoring and Compliance Counsel respectfully submit the following additional information regarding monitoring and compliance with the Settlement.

**1. Please provide a supplemental list of the five most concrete improvements at Pinterest made during the period covered by the status report. This should include specific explanations as to how those improvements help solve the issues in this case.**

**Hiring of Chief Inclusion and Diversity Officer** – With the assistance of the rubric for hiring a DEI leader that became part of the Settlement Agreement, Pinterest hired Nichole Barnes Marshall as its Chief Inclusion and Diversity Officer.

COHENMILSTEIN

February 9, 2023
Page 2

In our capacity as Monitoring and Compliance Counsel we interviewed Ms. Barnes Marshall, and observed her presentations and responses to questions from the non-profit community at Inclusion Advisory Council meetings. Based on those first-hand observations, we believe she is a powerful steward for creating and leading a culture of inclusion at Pinterest and achieving the goals of the Settlement. Notably, Pinterest issued a press release describing her as someone who would lead the cultural transformation at Pinterest by driving accountability, adoption and strategies for workplace culture and marketplace programs. Based on public interactions, we believe she is an effective advocate with CEO Bill Ready, Board member Andrea Wishom, and Chief People Officer Christine Deputy, and more broadly the non-profit community that serves on the IAC.

Beyond herself being one of Pinterest's most important improvements to date, we have conferred with Ms. Barnes Marshall in identifying four additional concrete improvements that help resolve issues in this case, as follows:

| | |
|---|---|
| Increased Diverse Gender Representation | <ul><li>Pinterest set a goal of 35% women in leadership goal (originally set for 2025).</li><li>Pinterest exceeded this goal, with women in leadership having reached 39% in Q3 2022.</li></ul> |
| Executive Team Hires and Promotions | <ul><li>As of H2 2022, two-thirds of the executive team are women or people of color</li><li>Wanji Walcott joined Pinterest as Chief Legal Officer</li><li>Andrea Mallard was promoted to Chief Marketing and Communications Officer</li></ul> |
| Diverse Slates Approach (DSA) | <ul><li>Pinterest achieved 82% diverse slates for all roles</li></ul> |
| People Team Intercultural Development Inventory (IDI) Assessment | <ul><li>The IDI assesses intercultural competence—the capability to shift cultural perspective and appropriately adapt behavior to cultural differences and commonalities.</li><li>The Chief Inclusion and Diversity Officer conducted the IDI assessment for 62 leaders across the people team (EPLT) to support building intercultural competence.</li><li>Pinterest will integrate the IDI baseline findings into the inclusion and diversity learning and development strategy for its people and leadership teams with the goal of supporting leadership accountability across Pinterest.</li></ul> |

COHENMILSTEIN

February 9, 2023
Page 3

2.   **Pinterest's rate of spending on DEI initiatives approaches but is slightly less than a rate that would result in all $50 million being spent in the ten-year window contemplated by the settlement.**

Monitoring and Compliance Counsel were intentional about negotiating a window for spending on DEI initiatives that would embed DEI strategies throughout Pinterest's corporate culture.  Too frequently, we see an approach to spending on settlement agreements that nominally complies with the settlement terms by rapidly spending on a host of DEI initiatives, yet fails to create long-term, meaningful change.  The intention behind creating a ten-year spending window is to provide Pinterest the latitude to implement new systems, assess their effectiveness, and to the extent necessary, pivot and try new approaches that would ultimately be more beneficial.  We believe Pinterest is committed to spending the full $50 million and we hope that the Company will spend the money wisely and thoughtfully to achieve the settlement's goals and to create a more equitable and inclusive corporate culture for this generation and the next.

Beyond our own views, we have conferred with the Company in preparing this submission.  Pinterest has indicated that it is fully committed to fulfilling the settlement DEI spend requirements in a meaningful and thoughtful way over the next ten years.  The Company has reiterated its intention of using the allocated settlement funds to create impactful DEI programs, training, and initiatives.

According to Pinterest, as a general matter, the Company anticipates that the rate of spending will fluctuate over time rather than stay flat across each quarterly reporting period.[1]  Such fluctuations are normal in most businesses, including Pinterest's.  Notably, they occur not just for expenditures, but for revenues, and other financial metrics as well, as Pinterest has disclosed historically.

Pinterest further explained that such fluctuations may occur for a variety of reasons, including: (1) the necessity of a spending ramp-up at the beginning of the settlement period, (2) the implementation of new programs and increase in scope of existing programs over time, and (3) the seasonality of the company's business. For example, in some quarters, DEI spend may increase because the company launches a new diversity training initiative or because the company's

---

[1] The Company respectfully noted that it was unable to replicate the Court's calculation that "[t]his rate of spending approaches, but is slightly less than, a rate that would result in all $50 million being spent in the ten-year window contemplated by the settlement." ECF No. 138 at 1-2. Fifty million dollars spent over ten years would imply a linear rate of expenditure of $416,666.67 per month.  Over the period of five months reported, that would amount to $2,083,333.33.  The Company reported "$2,383,679.26 between May and October 2022[,]" as the Court's order notes.  ECF No. 138.  The rate of expenses, therefore, exceeds a straight-line projection.

COHENMILSTEIN

February 9, 2023
Page 4

"ongoing efforts to address workplace culture concerns (including to meet the goals we set in our Inclusion and Diversity Report that we publish annually). . . continue to result in[] increased costs[.]" Pinterest Inc., Quarterly Report (Form 10-Q) (April 28, 2022) at 50.  In other quarters, the Company's DEI spend may decrease because of the seasonality of the company's business, as recognized by the company's annual and quarterly reports.  See Pinterest Inc., Annual Report (Form 10-K) (February 3, 2021) at 13 ("[w]e have historically experienced seasonality in user growth, engagement and monetization on our platform"). In these periods of limited growth, DEI spend, as well as expenditure across the company, may decrease as revenue decreases.

Pinterest reiterated that despite fluctuations that may occur quarter to quarter, Pinterest is committed to spend $50 million on DEI related programs within the prescribed ten-year period.

3. **Have employees who "made gender or discrimination claims" been informed that Pinterest has agreed not to enforce non-disclosure agreements against them?**

During the settlement approval process, the Court inquired whether the settlement could include an affirmative notification to employees who signed non-disclosure agreements ("NDAs"). Such a provision was not acceptable to Pinterest; the Court approved the Settlement without such a requirement. Plaintiffs' Counsel repeatedly promoted this term as a key feature of the Settlement.  Further, it is a term that is consistent with California's Silenced No More Act.

Monitoring and Compliance Counsel has confirmed that Pinterest has not enforced any such NDAs.

In our experience, when a settlement has been announced, we are regularly contacted by individuals who are under a non-disclosure agreement with the defendant company and want to disclose that there has been a problem but they are limited in discussing the specifics. However, in this case, neither Cohen Milstein nor the Renne Public Law Group have been contacted by a current or former employee of Pinterest who has entered into a non-disclosure agreement and believes it will prevent her from revealing the facts or circumstances of her mistreatment.

Dated: February 9, 2023                            Respectfully submitted,

/s/
**COHEN MILSTEIN SELLERS & TOLL PLLC**
JULIE GOLDSMITH REISER (*pro hac vice*)

---

Submission Regarding Additional Information Pertaining to Monitoring of and Compliance with the Settlement

COHENMILSTEIN

February 9, 2023
Page 5

        jreiser@cohenmilstein.com
        MOLLY BOWEN (*pro hac vice*)
        mbowen@cohenmilstein.com
        1100 New York Ave. NW, 5th Floor
        Washington, DC 20005
        Telephone: (202) 408-4600
        Facsimile: (202) 408-4699

        *Monitoring and Compliance Counsel*

        **RENNE PUBLIC LAW GROUP**
        LOUISE RENNE (SBN #36508)
        lrenne@publiclawgroup.com
        350 Sansome St., Suite 300
        San Francisco, CA 94104
        Telephone: (415) 848-7200
        Facsimile: (415) 848-7230

        *Monitoring and Compliance Counsel*