1  **RENNE PUBLIC LAW GROUP**  **COHEN MILSTEIN SELLERS & TOLL PLLC**
2  LOUISE RENNE (SBN #36508)  JULIE GOLDSMITH REISER (*pro hac vice*)
   lrenne@publiclawgroup.com  jreiser@cohenmilstein.com
3  350 Sansome St., Suite 300  MOLLY BOWEN (*pro hac vice*)
   San Francisco, CA 94104  mbowen@cohenmilstein.com
4  Telephone: (415) 848-7200  1100 New York Ave. NW, 5th Floor
   Facsimile: (415) 848-7230  Washington, DC 20005
5  Telephone: (202) 408-4600
   *Monitoring Counsel*  Facsimile: (202) 408-4699
6

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| *In re Pinterest Derivative Litigation* | Lead Case No. 3:20-cv-08331-WHA |
|---|---|
| | **MONITORING COUNSELS' MOTION FOR AN AWARD OF THE BALANCE OF ATTORNEYS' FEES SOUGHT IN CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT** |
| | Date: November 14, 2024<br>Time: 8:00 a.m.<br>Judge: Honorable William Alsup<br>Courtroom: 12, 19th Floor |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................................... 1

STATEMENT OF THE ISSUE TO BE DECIDED............................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.    ARGUMENT................................................................................................................. 3

    A.    Plaintiffs' Fee Request is Reasonable ............................................................... 3

    B.    The Settlement Conferred Substantial Benefits on Pinterest........................... 4

    C.    Alternatively, Monitoring Counsel Should be Compensated for Monitoring the Settlement ...................................................................................................................... 7

II.    CONCLUSION ............................................................................................................. 8

# TABLE OF AUTHORITIES

**Cases**                                                                                            **Page(s)**

*Ams. Mining Corp. v. Theriault*,
    51 A.3d 1213 (Del. 2012) ..................................................................................................4

*In re BankAmerica Corp. Securities Litig.*,
    775 F.3d 1060 (8th Cir. 2015) ..........................................................................................7

*Burns v. Romero Gen. Constr.*,
    Case No. 13–cv–05647, 2015 WL 4498197 (N.D. Cal. July 23, 2015) ...................7

*In re Cathode Ray Tube Antitrust Litig.*,
    Case No. C-07-5944, 2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) .........................5

*Catholic Soc. Servs., Inc. v. Napolitano*,
    837 F. Supp. 2d 1059 (E.D. Cal. 2011)..............................................................................7

*In re LinkedIn ERISA Litig.*,
    Case No. 5:20-cv-05704, 2023 WL 8631678 (N.D. Cal. Dec. 13, 2023)..................4

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................................5

*Prison Legal News v. Schwarzenegger*,
    608 F.3d 446 (9th Cir. 2010) ...........................................................................................7

*Rodman v. Safeway*,
    Case No. 11-cv-03003, 2018 WL 4030558 (N.D. Cal. Aug. 22, 2018) ...................4

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on November 14, 2024, at 8:00 a.m., or as soon thereafter as this motion may be heard, either in person or by telephone or video conference as directed by the Court, Monitoring Counsel[1] will and hereby do move for an order before the Honorable William Alsup, United States District Judge of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, awarding Monitoring Counsel the balance of requested attorneys' fees that Plaintiffs' Counsel sought upon final approval. *See* ECF No. 134.

This motion is supported by the accompanying memorandum of points of authorities; all pleadings on file in this case; and such other matters as the Court may consider.

## STATEMENT OF THE ISSUE TO BE DECIDED

Whether the Court should award the balance of Plaintiffs' Counsel's fees requested in light of the substantial benefit the Settlement conferred on Pinterest, Inc. ("Pinterest" or "the Company") over the past two years and the ongoing benefit that will be conferred through the remainder of the Settlement's duration?

## MEMORANDUM OF POINTS AND AUTHORITIES

Monitoring Counsel respectfully submit this memorandum of law in support of their motion for an award of the balance of attorneys' fees requested at the time of final approval of the Settlement in the amount of $2,500,000. As Monitoring Counsel's reporting to the Court has demonstrated, the substantial corporate governance and workplace reforms that Plaintiffs' Counsel obtained through the Settlement, augmented by $50 million in mandatory funding for its reforms, has conferred a substantial benefit on Pinterest.

On June 9, 2022, the Court granted final approval of the Settlement of this shareholder derivative action. ECF No. 134. The Settlement provided for the adoption of robust corporate governance reforms designed to substantially change and improve Pinterest's workplace culture,

---

[1] "Monitoring Counsel" are Louise Renne of Renne Public Law Group, and Julie Reiser and Molly Bowen of Cohen Milstein Sellers & Toll PLLC. Unless otherwise defined, all capitalized terms have the meanings set forth in the Stipulation at ECF No. 99-2. Unless otherwise noted, citations and quotation marks are omitted, and emphasis is added.

1

Motion for an Award of the Balance of Attorneys' Fees Requested

plus a $50 million mandatory funding commitment to implement the reforms. *Id*. This Settlement was significant for the Company and its stockholders because it demonstrated the Board of Directors' ("Board") commitment to fostering an inclusive and equitable environment for Pinterest employees. In granting final approval, the Court requested monitoring of the Settlement for a two-year period to ensure Pinterest met the Settlement terms. Monitoring Counsel has overseen the Company's adherence to the Settlement terms and can readily conclude that Pinterest has met, and in several cases, exceeded its commitments during this period.

To date, Pinterest has spent over $12.5 million to implement the Settlement terms and its success in creating a more equitable workplace has been measurable. Women now hold 46% of leadership positions – a 16% increase in four years. *See* Ex. A at 15 (2024 ESG Impact Report). Additionally, the applicant pool for virtually every job opening includes candidates from diverse backgrounds; goals for diversity among new hires have been met; the ombuds program has been a success in providing guidance to employees; affinity groups and other communities that support the employee experience to have greater support; and Pinterest has been a leader in creating an inclusive platform that strives to represent all hairstyles, skin tones, body shapes, and abilities. In four years, media perception of Pinterest shifted markedly: in 2021, *Time* magazine published a critical article about "Pinterest and the Subtle Poison of Sexism and Racism in Silicon Valley."[2] By 2024, the same publication lauded Pinterest as one of its *Time100 Most Influential Companies 2024*.[3]

In recognition of their efforts and the benefit conferred on the Company, at the time of Final Approval, Plaintiffs' Counsel requested an award of attorneys' fees and reasonable litigation expenses. The Court awarded $2.5 million in attorneys' fees based on an adjusted lodestar calculation, but delayed awarding a multiplier of 2, as requested by Plaintiffs' Counsel. ECF No. 134 at 4. The Court determined that the benefit of the Settlement would be best demonstrated through the lens of "future implementation"; following the hearing, the parties agreed to monitor

---

[2] Janice Min, *Pinterest and the Subtle Poison of Sexism and Racism in Silicon Valley*, Time (Mar. 22, 2021), https://time.com/5947561/pinterest-gender-discrimination-racism/.

[3] Jared Lindzon, *Time100 Most Influential Companies 2024*, Time (May 30, 2024), https://time.com/6978812/pinterest-2/.

settlement compliance for two years, which the Court accepted. *Id.* at 5. As to the fee request, the Court stated that "[a] further amount may be awarded in two years based upon future compliance and a showing of the actual benefit that has flowed from the agreement." *Id.* at 6.

For the last two years, three attorneys – Louise Renne, Julie Reiser, and Molly Bowen – monitored the Settlement.[4] In their capacity as Monitoring Counsel, they reviewed information regarding Pinterest, obtained and reviewed internal documents, conducted four interview sessions with Chief Diversity Officer Nichole Barnes-Marshall, attended Pinterest's Inclusion Advisory Council meetings, asked questions and obtained information from Pinterest's outside counsel, and provided the Court with status reports every six months. *See* ECF Nos. 137, 139, 141, 142, 143.

Monitoring Counsel believe that the Settlement has conferred a substantial benefit on the Company. This has been borne out over the past two years where Monitoring Counsel have observed Pinterest devoting the time, attention, and resources to meet and, in some cases, exceed the letter and the spirit of the Settlement terms. We believe that Pinterest approached Settlement implementation with a commitment to ensure that inclusivity and belonging are core principles of its work and operating environment.

Considering the success of the Settlement, Monitoring Counsel respectfully request that the Court award the balance of attorneys' fees requested at the time of Final Approval.

I.  ARGUMENT

A.  **Plaintiffs' Fee Request is Reasonable**

As the Court previously noted,

> "Under both Delaware and federal law, a court may grant fees and expenses to derivative counsel when the derivative suit . . . confers a substantial corporate benefit." *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1445 (N.D. Cal. 1994) (Judge Vaughn Walker*); see also Lewis v. Anderson*, 692 F.2d 1267, 1270 (9th Cir. 1982). The benefit need not be pecuniary to give rise to attorney's fees. *See Klein v. Gordon*, No. C 17-00123, 2019 WL 1751839, at *1 (C.D. Cal. Feb. 12, 2019) (Judge André Birotte Jr.). Rather, to conclude that the benefits realized by the

---

[4] The Court ordered that monitoring counsel be limited to no more than two partners and two associates. Ms. Renne and Ms. Reiser are partners; Ms. Bowen was promoted from associate to partner during the pendency of the monitoring. She remained on the case to ensure continuity and efficiency in the work; her time in acting as Monitoring Counsel has been billed at an associate rate.

corporation are substantial, a district court may find that "the results of the derivative action maintained the health of the corporation and raised the standards of the fiduciary relationships and of other economic behavior. . . ." *Ibid.* ECF No. 134 at 4.

In their final approval submission, Plaintiffs' Counsel requested a fee award of $5,373,079, representing a multiplier of two. ECF 116. Pinterest did not oppose the request, and stated that it viewed the requested amount as reasonable. ECF 134 at 4. The Court granted an adjusted lodestar of $2.5 million, but opted to delay awarding a multiplier, if any, for two years, so that the Court could consider Pinterest's compliance and the benefit that flowed from the agreement. ECF 134 at 6.

Monitoring Counsel respectfully submit that a multiplier of 2 is merited in light of the substantial benefit conferred on Pinterest. This request is "'well within the range of reasonableness.'" *In re Abercrombie & Fitch Co. S'holders Derivative Litig.*, 886 A.2d 1271, 1273, 1276 (Del. 2005) (quoting and affirming Court of Chancery's assessment of proposed fees that would yield a multiplier of 2.39 over lodestar); *see also In re Alphabet, Inc. S'holder Derivative Litig.*, Lead Case No. 19CV341522, slip op. at 4 (Cal. Super. Ct., Cnty. of Santa Clara Feb. 5, 2021) (awarding $29 million in attorneys' fees in a derivative action, amounting to a 2.9 multiplier on counsel's lodestar, and observing that the multiplier was "reasonable given the contingent nature of the action and substantial risk of non-recovery; the novelty and complexity of the issues; and the excellent result achieved for shareholders"). Additionally, it comported with the multiplier cap negotiated with and approved by Interim Lead Plaintiff ERSRI. *See* ECF No. 116-3, Amy L. Crane Decl. ¶ 13.

**B.    The Settlement Conferred Substantial Benefits on Pinterest**

"Delaware courts have assigned the greatest weight to the benefit achieved in litigation." *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1254 (Del. 2012). Courts in this Circuit similarly focus most closely on the benefit achieved. *See In re LinkedIn ERISA Litig.*, Case No. 5:20-cv-05704, 2023 WL 8631678, at *9 (N.D. Cal. Dec. 13, 2023) (noting that the "'most critical factor'" in analyzing a proposed fee's reasonableness is "'the degree of success obtained'") (citation omitted); *Rodman v. Safeway*, Case No. 11-cv-03003, 2018 WL 4030558, at *3 (N.D. Cal. Aug.

22, 2018) (awarding 28% for attorneys' fees for "exceptional results"); *In re Cathode Ray Tube Antitrust Litig.*, Case No. C-07-5944, 2016 WL 4126533, at *4 (N.D. Cal. Aug. 3, 2016) ("[o]utstanding results merit a higher fee"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (settlement's "substantial achievement" supported a 28% fee award).

Reflecting on the progress over the past two years, Monitoring Counsel feel confident concluding that the Settlement they negotiated with Defendants conferred a substantial benefit on Pinterest. Pinterest has achieved national recognition for its development of inclusive search algorithms. *Wired* magazine and a host of other news sources have commended Pinterest for its inclusive product, explaining that most social media sites promote biases toward white, thin bodies.[5] Significantly, Plaintiffs' Counsel were responsible for bolstering Pinterest's inclusive product development by insisting on having a team of 20 as part of the Settlement. This filled a gap left by the Company's own reforms, which did not reach Pinterest's product, but only its employment environment. *See* ECF No. 106-1; ECF No. 99-2 at 36 (Ex. 1, Appendix C).

Another area of notable improvement for Pinterest is representation in its workforce, including with respect to women and people of color. Pinterest recently announced that women hold 46% of leadership roles at the Company. *Compare* Ex. A at 15 (2024 ESG Impact Report) *with* Pinterest 2021 Inclusion & Diversity Report, https://newsroom.pinterest.com/news/pinterest-2021-inclusion-diversity-report/ (noting women in leadership was 30% in 2020). In 2023, Pinterest was named by *Fast Company* as one of the Best Workplaces for Innovators: Women Employees.[6] Additionally, Pinterest has made significant progress in ensuring that a diverse slate of candidates are considered in the hiring process; in 2023, 91% of open roles considered at least one candidate who came from a diverse background. *Id.* at 25. Monitoring Counsel believe that the Settlement terms requiring the Company to follow best practices for diverse and inclusive recruiting, interviewing, and professional development contributed to these improvements in hiring,

---

[5] Paresh Dave, *Pinterest's New Algorithms Want You to See Every Body Type*, Wired (Sept. 7, 2023), https://www.wired.com/story/pinterests-new-algorithms-want-you-to-see-every-body-type/.

[6] Jay Woodruff, *Best Workplaces for Innovators 2023: Women employees*, Fast Company (July 11, 2023), https://www.fastcompany.com/90919566/pinterest-earns-recognition-for-innovation/.

retention, and advancement of women and people of color at Pinterest. *See*, *e.g.,* ECF No. 99-2, Agreed Settlement Commitments (IV.1 requiring executives to be held accountable for developing equity and inclusion goals; IV.3 requiring equity and inclusion efforts to be part of managers' evaluations; VI.3 considering managers' progress in creating an inclusive workplace culture in evaluations; XIII.3 providing guidance to candidates about what they can expect in their interview[7]; XIII.4 ensuring interview and post-interview process is standardized and structured to reduce risk of bias; XIII.6 strengthening the diverse slate requirement; XIII.9 providing current employees with access to compensation ranges for levels within their job family).

Additionally, Monitoring Counsel negotiated in the Settlement for governance changes to increase the likelihood that a focus on diversity and inclusion would become embedded into the Company's culture. That approach has borne fruit. The Company has established strong internal systems to measure and monitor metrics around workplace diversity and inclusion, and Pinterest's internal audit system regularly reports on employee hiring, retention, promotion, and job satisfaction metrics to the Board. While corporate audit teams traditionally only identify financial and legal risk, through this Settlement Pinterest recognized employment decisions as a risk that also deserved Board-level attention.

The Settlement also required the Company to allocate $50 million in funding for the creation, implementation, and annual maintenance of the Settlement reforms, to be expended within 10 years. ECF No. 99-2, Agreed Settlement Commitments XIV.2. At the time of Final Approval, the Court expressed concerns that this term may be illusory given that the funds were not appropriated or set aside in a bank account. Monitoring Counsel are pleased to report that Pinterest has complied with – and exceeded – the Settlement term on funding. In the first two years, Pinterest expended approximately $12.5 million, and affirmed its commitment to expending

---

[7] *See* three examples on Pinterest's website that explain and offer tips for the interview process: *Interviewing at Pinterest*, Pinterest Careers, https://www.pinterestcareers.com/interviewing/ (last accessed _Aug. 16, 2024), *Advice from Pinterest Recruiting*, Pinterest Careers, https://www.pinterestcareers.com/life-at-pinterest-blog/interviewing/advice-from-pinterest-recruiting/ (last accessed Aug. 16, 2024), and Cristal Reyes & Bethany Burns, *Interviewing at Pinterest: Advice from Apprentice Alumni*, Pinterest Design (June 10, 2024), https://pinterest.design/article/interviewing-at-pinterest-advice-from-apprentice-alumni/.

the remaining approximately $37.5 million in the coming years. *See* ECF No. 143 at 1-2.

Finally, we recognize that turnover in Pinterest's leadership has facilitated the Settlement's success. Pinterest's founder and CEO at the time of the events giving rise to the litigation stepped back in June 2022 and was succeeded by Bill Ready. Monitoring Counsel has been heartened by the degree to which Mr. Ready has embraced the Settlement and his knowledge and ability to speak compellingly on the importance of diversity, equity, and inclusion to Pinterest as a workplace and a brand. We have also been tremendously impressed by Nichole Barnes Marshall, who joined Pinterest in 2022 as Global Head of Inclusion and Diversity. Ms. Barnes Marshall brings decades of experience in this work; she is deeply knowledgeable and sophisticated.

As the monitoring has borne out, the Settlement was not merely cosmetic. It led to actual, tangible results and expenditure of significant funds. Plaintiffs therefore conferred a substantial benefit on Pinterest that warrants the award of the balance of the fee initially sought.

**C.     Alternatively, Monitoring Counsel Should be Compensated for Monitoring the Settlement**

In the event the Court declines to award a multiplier, Monitoring Counsel respectfully request compensation for time they spent monitoring the Settlement. Monitoring Counsel have accrued $200,488.75 in lodestar in monitoring the Settlement over the past two years. "In general, post-settlement monitoring is a compensable activity for which counsel is entitled to a reasonable fee." *In re BankAmerica Corp. Securities Litig.*, 775 F.3d 1060, 1068 (8th Cir. 2015); *see also Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 452 (9th Cir. 2010) (holding that plaintiffs' counsel were entitled to fees for post-settlement monitoring); *Burns v. Romero Gen. Constr.*, Case No. 13–cv–05647, 2015 WL 4498197, at *4-5 (N.D. Cal. July 23, 2015) (awarding post-settlement monitoring fees); *Catholic Soc. Servs., Inc. v. Napolitano*, 837 F. Supp. 2d 1059, 1066-67 (E.D. Cal. 2011) (same).

Motion for an Award of the Balance of Attorneys' Fees Requested

## II.     CONCLUSION

For the foregoing reasons, Monitoring Counsel respectfully request that the Court approve the multiplier sought by Plaintiffs' Counsel and award Plaintiffs' Counsel an additional $2,500,000 in attorneys' fees, reflecting the substantial benefit that this Settlement conferred on Pinterest.

Dated: August 30, 2024                    Respectfully submitted,

By:  /s/ Julie Goldsmith Reiser

**RENNE PUBLIC LAW GROUP**
LOUISE RENNE (SBN #36508)
lrenne@publiclawgroup.com
350 Sansome St., Suite 300
San Francisco, CA 94104
Telephone: (415) 848-7200
Facsimile: (415) 848-7230

*Monitoring Counsel*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
JULIE GOLDSMITH REISER (*pro hac vice*)
jreiser@cohenmilstein.com
MOLLY BOWEN (*pro hac vice*)
mbowen@cohenmilstein.com
1100 New York Ave. NW, 5th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

*Monitoring Counsel*